GAUTAM A. SHAH *et al.*, Plaintiffs-Appellants, *v.* CHICAGO TITLE AND TRUST COMPANY *et al.*, Defendants-Appellees.

First District (4th Division)    No. 81-107

Opinion filed December 23, 1981.

Werner E. Hintz and Stephen G. Shelesny, both of Chicago, for appellants.

Malato & Stein, of Chicago, for appellees Falcon Development Co., Inc., and American National Bank & Trust Company of Chicago.

Lawrence Sulzbacher and Raymond J. Werner, both of Chicago, for appellees Chicago Title and Trust Company and Chicago Title Insurance Company.

JUSTICE JIGANTI delivered the opinion of the court:

The plaintiffs, Gautam A. Shah and Sudha G. Shah, individually and as representatives of a purported class, filed a three-count complaint against the defendants, Chicago Title and Trust Company (CT&T), Chicago Title Insurance Company (CTIC), Falcon Development Company, Inc., and American National Bank and Trust Company, stemming from the plaintiffs' purchase of a condominium unit from Falcon. Count I alleged that the defendants defrauded the plaintiffs through the artifice of an escrow agreement. This count is proceeding through discovery in the trial court. Counts II and III, which alleged violations of the Real Estate

Settlement Procedures Act of 1974 (RESPA) (12 U.S.C.A. §2601 *et seq.* (1980)), were dismissed on the grounds that they failed to state a cause of action. The dismissal was designated as an appealable order pursuant to Supreme Court Rule 304(a) (Ill. Rev. Stat. 1979, ch. 110A, par. 304(a)), and the plaintiffs have elected to appeal only from the dismissal of count II. Specifically, count II alleges a violation of the antikickback provision of RESPA, which provides as follows:

> "No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person." (12 U.S.C.A. §2607(a) (1980).)

The plaintiffs claimed that the defendants violated this section by entering into an agreement or understanding whereby Falcon and American would be given various title services at a reduced rate in exchange for referring individual purchasers to CT&T and CTIC for settlement services.

The events leading to this appeal began when Falcon undertook to convert an apartment complex in Arlington Heights, Illinois, into condominium property. American held legal title to the property as trustee of a land trust. At the time of conversion the property was encumbered by certain trust deeds.

In connection with the conversion, Falcon arranged for CT&T and CTIC to perform various escrow and title insurance activities. This arrangement had its genesis in the form of a pricing proposal sent by CT&T to Falcon. In its first paragraph, the proposal states that it is "for furnishing title insurance in connection with converting the four existing apartment buildings, consisting of a total of 156 units, to condominium ownership * * *." The next paragraph provides that "[t]itle insurance has been deferred to unit sales on the assumption that we will receive orders for individual units." The proposal then goes on to set the rates which CT&T was willing to give Falcon for its land acquisition loan, construction loan for remodeling, and owner's title insurance for the individual units. Under a heading entitled "Optional Services," the proposal stated as follows:

> "Assuming all units are closed through our Skokie Office Escrow Department, the following schedule of fees will apply:
>
> 1. Deed and Money Escrow at $60 per unit. This fee is customarily divided between the buyer and the seller.
>
> 2. Proceeds of Loan Escrow, if ordered simultaneously with a Deed and Money Escrow, at $25 per unit. This fee is customarily the purchaser's expense."

Falcon subsequently accepted this proposal and began to sell the units. In its standard form purchase agreement, Falcon provided that it would furnish purchasers with an owner's title insurance policy and that "[p]urchaser hereby designates Chicago Title and Trust Company to furnish title insurance as herein required."

In connection with the purchase of their unit, the plaintiffs purchased escrow services from CT&T and lenders title insurance for their purchase money mortgagee from CTIC. Essentially, the plaintiffs alleged in count II that the pricing proposal between Falcon and CT&T constituted an agreement or understanding by which "Falcon and American for a thing of value agreed to refer plaintiffs' class to CT&T and CTIC for the purchase of settlement services." The "things of value" were described in the complaint as follows: (a) policy and related services given Falcon and American for their land acquisition loan at an unreasonably low cost; (b) policy and related services given Falcon and American for their construction loan for remodeling at an unreasonably low cost; (c) unit sale owner's title insurance policies given to Falcon and American at an unreasonably low cost, considering that the plaintiffs' class was charged more for a lender's policy resulting in no more work and less liability to CTIC; and (d) preferential escrow service given Falcon and American, resulting in a free loan to Falcon and American when CT&T did not obtain the release of prior mortgages prior to closing the escrow pursuant to the escrow agreement. The prior mortgages are in fact the trust deeds, which, as previously mentioned, encumbered the condominium property.

The question before us is whether the trial court was correct in finding that the above-quoted allegations failed to state a cause of action under RESPA.

■■ RESPA was enacted in an attempt to effect nationwide changes in the residential settlement service process that would result "in the elimination of kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services." (12 U.S.C.A. §2601(b)(2) (1980).) To plead a cause of action under the antikickback provision of RESPA, the plaintiffs must allege first, an agreement between the parties to refer settlement service business, second, the transfer of a thing of value, and third, the referral of settlement service business. Because Illinois is a fact-pleading state, the complaint must contain sufficient facts to support these allegations. *People ex rel. Fahner v. Carriage Way West, Inc.* (1981), 88 Ill. 2d 300, 430 N.E.2d 1005.

In determining the propriety of the trial court's dismissal, we will begin by considering the sufficiency of the plaintiffs' allegation concerning an agreement or understanding between the defendants to refer settlement service business. The plaintiffs take the position that a detailed

agreement need not be alleged when the circumstances indicate that all parties understood a referral would be made. To support this, they cite the following regulation interpreting RESPA:

"*Agreement or understanding.* An agreement or understanding for the referral of settlement business need not be verbalized but may be established by a practice, pattern or course of conduct pursuant to which the payor and recipient of the thing of value understand that the payment is in return for the referral of business. A payment that is made repeatedly and is connected in any way with the volume or value of the business referred to the payor by the recipient is presumptively pursuant to an agreement or understanding." (24 C.F.R. §3500.14(c) (1980).)

Essentially, the plaintiffs claim that under this definition the pricing proposal from CT&T to Falcon can be interpreted as an agreement or understanding to refer settlement business. They point to three specific areas in the pricing proposal as examples to support their claim.

■■ First, the plaintiffs claim that the rates contained in the proposal were clearly related to the volume of business to be referred because paragraph 1 refers to a development of "156 units." We do not believe that this reference to volume indicated in any way that the rates offered to Falcon were dependent upon Falcon's willingness to refer individual unit purchasers to CT&T. Rather, it is merely a product of Falcon trying to obtain discounted rates based upon the economies of scale which would result from the volume of services which Falcon, itself, would require in connection with the conversion. This court has already held that discounts based upon economies of scale and volume are legitimate business practices. *Perrin v. Pioneer National Title Insurance Co.* (1980), 83 Ill. App. 3d 664, 404 N.E.2d 508.

Second, the plaintiffs claim that the pricing proposal contemplates a referral of business when it states that, "[t]itle insurance has been deferred to unit sales on the assumption that we will receive orders for individual units." A reading of this portion of the proposal shows that the title insurance in question is owner's title insurance which was to be paid for by Falcon, not the unit purchasers. Thus, this clause cannot be interpreted as an agreement to refer business.

The third portion of the pricing proposal which the plaintiffs claim can support an allegation of an agreement to refer business is located under the heading of "Optional Services." The paragraph begins, "[a]s-suming all units are closed through our Skokie Office Escrow Department, the following schedule of fees will apply * * *." It then goes on to list the rate for a deed and money escrow, which is customarily divided equally between the buyer and the seller. Also, it quotes a price for a proceeds of loan escrow, which is usually the purchaser's expense. In our

view, this paragraph fails to support the plaintiffs' allegation of an agreement by Falcon to refer unit buyers to CT&T for settlement services. The "things of value" which the plaintiffs allege were given by CT&T to Falcon in exchange for a referral consist of low rates for services relating to a land acquisition loan, construction loan, and owner's title insurance. It appears from the pricing proposal that these rates are unrelated to whether or not Falcon ordered the "optional services." Thus, they cannot be considered as an exchange for the referral of business.

Even accepting the plaintiffs' argument that a detailed agreement need not be alleged, it is still necessary to plead facts which evidence a scheme by the parties involving the payment of value in exchange for the referral of business. (See *McCarrick v. Polonia Federal Savings & Loan Association* (E.D.Pa. 1980), 502 F. Supp. 654.) After examining the pricing proposal as a whole, it is our judgment that nothing therein can be interpreted so as to support an allegation of an agreement or understanding to refer settlement business in violation of RESPA.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

JOHNSON and LINN, JJ., concurring.