FOURTH DIVISION

December 9, 2004

1-03-2820

EVON W. JOHNSON and ROBERT E. JOHNSON,
 ) Appeal from the

) Circuit Court of

Plaintiffs-Appellants,
 ) Cook County. 

)

v. ) 

)

MATRIX FINANCIAL SERVICES CORPORATION )

and DOLPHIN MORTGAGE CORPORATION, ) Honorable

) Sheldon Gardner,

Defendants-Appellees. ) Judge Presiding.

JUSTICE QUINN delivered the opinion of the court:

The following facts, taken as true, appear in plaintiffs' dismissed, third-amended complaint: In March 2000, plaintiffs Evon and Robert Johnson retained the services of a mortgage broker, Dolphin Mortgage Corporation (Dolphin), "to act as their exclusive broker to obtain a mortgage loan for them." 
Plaintiffs directed Dolphin to obtain a 30-year mortgage loan for $173,569 at "the specific interest rate of 8.75%" and authorized Dolphin to receive up to 3.5% of the loan proceeds as its compensation.  If Dolphin could not find a mortgage with the terms plaintiffs requested, Dolphin would receive 1% of the loan proceeds as compensation.  
In June 2000, Dolphin brokered a mortgage loan for plaintiffs from Matrix Financial Services Corporation (Matrix), but with an interest rate higher than what plaintiffs had hoped for.  Pursuant to their agreement, plaintiffs paid Dolphin a broker fee of $1,708.87 (1% of the loan principal obtained from Matrix), which was deducted from the loan proceeds.  "Unbeknownst" to plaintiffs, however, Dolphin also received $4,149.86 from Matrix.  Plaintiffs alleged that this payment was a "kickback" designed to "induce [Dolphin] to refer the loan to Matrix and to secretly raise the interest rate of the loan above the 8.75% for which Plaintiffs were qualified."  This $4,149.86 was not paid from the proceeds of the loan.    

Plaintiffs alleged this kickback, known as a "yield spread premium"
(footnote: 1) (YSP), violated public policy as expressed in the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. § 2601 
et seq.
 (2000)).  They alleged that the YSP "paid by Matrix to Dolphin was unreasonable and was paid simply for the referral of business, not as compensation for goods, facilities, or services performed."  Plaintiffs contended: "Dolphin had contracted for and received other compensation for its services as a mortgage broker.  Thus, the [YSP] could not be anything other than a fee for referral of business and not as bona fide compensation."

Plaintiffs alleged that the payment of this YSP was not disclosed until the day of closing and that, had they known that Dolphin was receiving this kickback, they would never have "entered into the transaction."
  They also alleged that neither Matrix nor Dolphin offered them the opportunity to pay "all costs up front" or disclosed "the link between the [YSP] and a higher interest rate."  Instead, both Dolphin and Matrix "concealed this material information with the intent that [plaintiffs] would rely on the concealment."  Plaintiffs alleged that Dolphin could and should have obtained a loan at the interest rate they requested and that they were harmed by the payment of the unearned YSP "by increasing the cost of credit," which, they alleged, amounted to approximately $52,500.
(footnote: 2)
 Plaintiffs alleged that Dolphin "had always represented that all compensation would come from loan proceeds, not from a referral fee or [YSP]," and that it engaged in self-dealing by accepting the YSP.
  They also alleged that Matrix induced Dolphin "to breach its fiduciary duty by offering a kickback to [Dolphin] in order to refer the loan to [Matrix] and raise the interest rate on the loan" and, as a result of Matrix's actions, plaintiffs were "fraudulently induced into a high cost loan in order to allow [Dolphin] to self- deal and receive a kickback from" Matrix.
  

Contained in plaintiffs' third-amended complaint were three counts: (1) fraud, pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act)(815 ILCS 505/1 
et
 
seq
. (West 2000)), against both Dolphin and Matrix; (2) breach of fiduciary duty against Dolphin; and (3) inducing a breach of fiduciary duty against Matrix.  
The circuit court dismissed plaintiffs' third-amended complaint with prejudice on September 4, 2003.  Plaintiffs filed a timely notice of appeal.   

ANALYSIS

I.  STANDARD OF REVIEW

Dolphin based its motion to dismiss upon section 2-615 of the Code of Civil Procedure (the Code) (735 ILCS 5/2-615 (West 2002)).  Matrix, on the other hand, purportedly filed its motion to dismiss based upon section 2-619.1 (735 ILCS 5/2-619.1 (West 2002)), seeking dismissal of plaintiffs' complaint under both sections 2-615 and 2-619 of the Code.  Section 2-619.1 states: 

"Motions with respect to pleadings under Section 2-615, motions for involuntary dismissal or other relief under Section 2-619, and motions for summary judgment under Section 2-1005 may be filed together as a single motion in any combination.  A combined motion, however, shall be in parts.  Each part shall be limited to and shall specify that it is made under one of Sections 2-615, 2-619, or 2-1005.  Each part shall also clearly show the points or grounds relied upon under the Section upon which it is based."  735 ILCS 5/2-619.1 (West 2002).

This section "permits a party to combine a section 2-615 motion to dismiss based upon a plaintiff's substantially insufficient pleadings with a section 2-619 motion to dismiss based upon certain defects or defenses."  
Edelman, Combs & Latturner v. Hinshaw & Culbertson
, 338 Ill. App. 3d 156, 164, 788 N.E.2d 740 (2003), citing 735 ILCS 5/2-619.1 (West 2000).
   

In reviewing Matrix's motion to dismiss, we cannot discern what defect or defense it relied upon for the "section 2-619" portion of its motion.  In its memorandum of law attached to its motion, under a section entitled "MOTION TO DISMISS PURSUANT TO 735 ILCS 5/2-619," Matrix argued that plaintiffs' complaint "should be dismissed because Dolphin disclosed to Plaintiffs the same facts they claim were withheld from them."  Matrix contended that certain documents signed by plaintiffs "directly contra-dict[ ] the allegations" in their complaint.  Nowhere in Matrix's motion, however, does it cite to any subsection of section 2-619 as the basis for its motion, nor does it cite any case holding that offering evidence that allegedly contradicts allegations in a complaint constitutes a defect, defense, or other affirmative matter that would warrant dismissal under section 2-619 (in fact, it cites no case at all).  Because the portion of Matrix's motion filed pursuant to section 2-619 failed to "show the points or grounds relied upon under the Section upon which it is based" (735 ILCS 5/2-619.1 (West 2002)), we will treat both Dolphin's and Matrix's motions as premised upon section 2-615. 

In reviewing a dismissal pursuant to section 2-615, all well-pleaded facts in the complaint are taken as true.  
Indeck North American Power Fund, L.P. v. Norweb, PLC
, 316 Ill. App. 3d 416, 430-31, 735 N.E.2d 649 (2000).  Dismissal pursuant to a section 2-615 motion is proper only where the court can determine the relative rights of the parties solely from the pleadings.  
Indeck
, 316 Ill. App. 3d at 430-31.  A plaintiff cannot rely simply upon conclusions of law or fact unsupported by specific factual allegations.  
Grund v. Donegan
, 298 Ill. App. 3d 1034, 1039, 700 N.E.2d 157 (1998).  When a complaint is dismissed pursuant to section 2-615, the standard of review is 
de novo
.  
Vernon v. Schuster
, 179 Ill. 2d 338, 344, 688 N.E.2d 1172 (1997).

II.  CONSUMER FRAUD CLAIM

In their third-amended complaint, plaintiffs alleged that the YSP payment from Matrix to Dolphin violated RESPA's antikickback provision, which prohibits kickbacks and referral fees in connection with mortgage brokering.  Conceding that their claim under RESPA was barred by its one-year statute of limitations, plaintiffs attempted to parlay this alleged RESPA violation into a claim under the Consumer Fraud Act; a claim that was not time-barred.  On appeal, plaintiffs argue that the circuit court erred in dismissing with prejudice their claim under the Consumer Fraud Act because 
the payment of the YSP constituted an unfair practice that both "offends public policy and does substantial harm to consumers" in violation of the Consumer Fraud Act.  Plaintiffs also argue, in the alternative, that the YSP payment made by Matrix to Dolphin supports a claim under the Consumer Fraud Act independently of whether that payment violated RESPA's antikickback provision. 

In 1974, Congress enacted RESPA "to insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country."  12 U.S.C. § 2601(a)(2000).  In order to achieve these goals, one change that Congress sought was the "elimination of kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services."  12 U.S.C. § 2601(b)(2)(2000).  Thus, RESPA prohibits lenders from paying referral fees or kickbacks to brokers:

"No person shall give and no person shall accept any fee, kickback or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person." 
12 U.S.C. 
§ 2607(a)(2000).

RESPA contains a safe harbor provision, however, which exempts certain payments from being considered prohibited referral fees: 

"Nothing in this section shall be construed as prohibiting (1) the payment of a fee *** (C) by a lender to its duly appointed agent for services actually performed in the making of a loan, (2) the payment to any person of a bona fide salary or compensation or other payments for goods or facilities actually furnished or for services actually performed, (3) payments pursuant to cooperative brokerage and referral arrangements or agreements between real estate agents and brokers ***." 
 12 U.S.C. 
§ 
2607(c)(2000)
. 

The first question here is whether a payment to a broker in violation of RESPA's antikickback provision would also support a claim under the Consumer Fraud Act. 

The Consumer Fraud Act is a regulatory and remedial statute intended to protect consumers, borrowers, and business people against fraud, unfair methods of competition, and other unfair and deceptive business practices.  
Robinson v. Toyota Motor Credit Corp.
, 201 Ill. 2d 403, 416-17, 775 N.E.2d 951 (2002).  It is to be liberally construed in order to effectuate its purpose.  
Cripe v. Leiter
, 184 Ill. 2d 185, 191, 703 N.E.2d 100 (1998).  Section 10(a) of the Consumer Fraud Act creates a remedy for persons who suffer damage as a result of a violation of the Act. See 815 ILCS 505/10a(a)(West 2000).

The elements of a claim under the Act are: (1) a deceptive act or practice; (2) the intent that the plaintiff rely on the deception; and (3) the occurrence of the deception during a course of conduct involving trade or commerce.  
Cripe
, 184 Ill. 2d at 191.  Unfair and deceptive practices are described in the Act as:

"[I]ncluding but not limited to the use or

employment of any deception, fraud, false pretense, 

false promise, misrepresentation or the concealment, suppression or omission of any material fact, with 

intent that others rely upon the concealment, 

suppression or omission of such material fact *** 

in the conduct of any trade or commerce ***." 815 

ILCS 505/2 (West 2000).

The Consumer Fraud Act mandates that, in determining whether a given course of conduct or act is unfair, 
"consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act."  815 ILCS 505/2 (West 2000).  The Federal Trade Commission has published a statement of factors that can be used to measure whether a given practice is unfair, including (1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether it causes substantial injury to consumers.  
Robinson
, 201 Ill. 2d at 417-18, citing 
Federal Trade Comm'n v. Sperry & Hutchenson Co.
, 405 U.S. 233, 244 n.5, 31 L. Ed. 2d 170, 179 n.5, 92 S. Ct. 898, 905 n.5 (1972).  " ' "All three criteria do not need to be satisfied to support a finding of unfairness.  A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." ' "  
Robinson
, 201 Ill. 2d at 418, quoting 
Cheshire Mortgage Services, Inc. v. Montes
, 223 Conn. 80, 106, 612 A.2d 1130, 1143-44 (1992).

Illinois has a clear policy against kickbacks regardless of who the players in that kickback scheme might be.  See 225 ILCS 85/23 (West 2002) (making it unlawful for a pharmacist or pharmacy to offer a kickback to hospitals, doctors, and anyone else authorized to prescribe drugs for steering business to that pharmacist or pharmacy);
 305 ILCS 5/8A-3 (West 2002) (criminalizing any kickback in connection with determining one's eligibility for public aid); 
305 ILCS 5/8A-16(5) (West 2002) (stating that "[o]ffering any kickback, bribe, reward, or benefit to any person as an inducement to select or to refrain from selecting any health care service, health plan, or health care provider" is a Class A misdemeanor);
 720 ILCS 5/33E-7 (West 2002) (making it a Class 3 felony to offer or solicit a kickback during negotiations for public contracts); 805 ILCS 5/8.70 (West 2002) (imposing treble damages and attorney fees upon any officer or director of a corporation found to be involved in any kickback or bribery scheme);
 see also 
Sullivan's Wholesale Drug Co. v. Faryl's Pharmacy, Inc.
, 214 Ill. App. 3d 1073, 1083-84, 573 N.E.2d 1370 (1991) (finding that a kickback scheme where a nursing home pocketed 15% of the drug profits obtained from the sale of drugs to its patients constituted a "deceptive act" under the Consumer Fraud Act).  

Illinois has also sought to enforce RESPA through such means as revoking the license of a title insurance agent who violates its provisions.  See 
215 ILCS 155/21(a)(5)(West 2002) (permitting the revocation of a title insurance agent's license if the agent has "paid any commissions, discounts or any part of its premiums, fees or other charges to any person in violation of any State or federal law or regulations or opinion letters issued under" RESPA).  Therefore, in light of the fact that
 courts are supposed to liberally construe the Act to "effectuate its purpose" (see 
Robinson
, 201 Ill. 2d at 417)
, it would be consistent with public policy in Illinois that those harmed by an illegal kickback under RESPA be afforded an opportunity to seek redress not only under RESPA, but under the Consumer Fraud Act as well.  The next question is what a plaintiff must plead in order to state a claim under the Consumer Fraud Act based upon the payment of a YSP in violation of RESPA's antikickback provision.     
Courts and the Department of Housing and Urban Development (HUD), the agency which Congress authorized to "prescribe such rules and regulations, to make such interpretations, and to grant such reasonable exemptions for classes of transactions, as may be necessary to achieve the purposes of" RESPA (
Krzalic v. Republic Title Co.
, 314 F.3d 875, 877 (7th Cir. 2002), quoting 12 U.S.C. § 2617 (a)(2000)), have gone back and forth on the proper
 standard for assessing the legality of a particular YSP.  See 
Dominguez v. Alliance Mortgage Company
, 226 F. Supp. 2d 907, 911-13 (N.D. Ill. 2002); 
Michalowski v. Flagstar Bank
, No. 01 CV 6095, slip op. at ____ N.D. Ill. 2002); 
Vargas v. Universal Mortgage Corp.
, No. 01 CV 0087, slip op. at ____ (2001).  
HUD's two most recent policy statements announced its position that YSPs are neither legal nor illegal 
per se
: 

"[T]he first question is whether goods or

facilities were actually furnished or services 

were actually performed for the compensation paid.  

The fact that goods or facilities have been actually furnished or that services have been actually 

performed by the mortgage broker does not by itself 

make the payment legal. The second question is whether 

the payments are reasonably related to the value of the goods or facilities that were actually furnished or 

services that were actually performed. 
 In applying this test, HUD believes that total compensation should be scrutinized to assure that it 

is reasonably related to goods, facilities, or services furnished or performed to determine whether it is legal under RESPA.  Total compensation to a broker includes 

direct origination and other fees paid by the borrower, indirect fees, including those that are derived from 

the interest rate paid by the borrower, or a combination 

of some or all.  The Department considers that higher interest rates alone cannot justify higher total fees 

to mortgage brokers.  All fees paid will be scrutinized 

as a part of total compensation to determine that total compensation is reasonably related to the goods or facilities actually furnished or services actually performed.  HUD believes that total compensation should 

be carefully considered in relation to price structures 

and practices in similar transactions and in similar markets."  
Dominguez
, 226 F. Supp. 2d at 911-12, 

citing 
Real Estate Settlement Procedures Act Statement             of Policy 1999-1 Regarding Lender Payments to Mortgage             Brokers, 64 Fed. Reg. 10080, 10084 (March 1, 1999)
 (HUD 

1999 policy statement). 

     In 2001, HUD issued another policy statement, further explaining its position on YSPs:

"It is HUD's position that neither Section 8(a) 

of RESPA nor the 1999 Statement of Policy supports 

the conclusion that a yield spread premium can be 

presumed to be a referral fee based solely upon the 

fact that the lender pays the broker a yield spread 

premium that is based upon a rate sheet, or because 

the lender does not have specific knowledge of what 

services the broker has performed. *** Whether or not 

a yield spread premium is legal or illegal cannot be determined by the use of a rate sheet, but by how HUD's 

test applies to the transaction involved." 
Dominguez
, 

226 F. Supp. 2d at 912, citing
 
Real Estate Settlement              Procedures Act Statement of Policy 2001-1: Clarification           of Statement of Policy 1999-1 Regarding Lender Payments            to Mortgage Brokers, and Guidance Concerning Unearned              Fees Under Section 8(b), 66 Fed. Reg. 53052, 53055                 (October 18, 2001)
 (HUD 2001 policy statement).

Though the Seventh Circuit has yet to interpret these two policy statements,
(footnote: 3) the Eight, Ninth, and Eleventh Circuits have parsed them into a two-step test: (1) whether the broker has provided goods or services of the kind typically associated with a mortgage transaction and (2) whether the total compensation paid to the broker is reasonably related to the total value of the goods or services actually provided.  See 
Heimmermann v. First Union Mortgage Corportation
, 305 F.3d 1257, 1263-64 (11th
 Cir. 2002); 
Schuetz v. Banc One Mortgage Corporation
, 292 F.3d 1004, 1011-13 (9th
 Cir. 2002); 
Glover v. Standard Federal Bank
, 283 F.3d 953, 964 (8th Cir. 2002).  

Some of the numerous services that a broker might provide to justify the payment of a YSP include (1) taking information from the borrower and filling out the mortgage application; (2) analyzing the prospective borrower's income and debt to determine the maximum mortgage the borrower can afford; (3) educating the borrower in the home buying and financing process; (4) collecting the necessary information and other related documents necessary for the application process; (5) verifying the borrower's employment; (6) orchestrating appraisals and inspections; (7) providing disclosures to the borrower (
i.e
. truth in lending, good-faith estimate); (8) helping the borrower clear up credit problems; (9) keeping the parties in contact and up to date on the status of the mortgage application; (10) ordering legal documents; (11) assessing whether the property was located in a flood zone; and (12) participating at the closing.  See 64 Fed. Reg. 10080, 10085 (C)(a) through (n)(March 1, 1999).  While a payment to a broker who provides "no, nominal, or duplicative work" would violate RESPA
, it is not necessary, when justifying the payment of a YSP, that the lender or the broker "tie the YSP payment to specific services provided."  
Heimmermann
, 305 F.3d at 1264.
 

If it is determined that the broker did indeed provide goods or services of the kind typically associated with a mortgage transaction
, the plaintiff must then show that the total compensation paid to the broker was not reasonably related to the total value of the goods or services actually provided
.  See 
Heimmermann
, 305 F.3d at 1263-64
.  HUD's 2001 policy statement lists several factors that are relevant when assessing the reasonableness of a mortgage broker's compensation: (1) after "careful consideration of fees paid in relation to price structures and practices in similar transactions and in similar markets," whether the compensation paid to the broker is "commensurate with the amount normally charged for similar services, goods or facilities"; (2) "the level of difficulty involved in qualifying [and processing] the applicant for particular loan programs," depending upon the applicant's credit rating, employment status, levels of debt, experience, etc.; (3) whether the mortgage broker is required "to perform various levels of services under different servicing or processing arrangements with wholesale lenders"; and (4) whether the mortgage broker's total compensation is commensurate for "loans of similar size and similar characteristics within similar geographic markets."  66 Fed. Reg. 53052, 53055 (October 18, 2001).   "[C]omparison to prices in similar markets is generally a key factor in determining whether a mortgage broker's total compensation is reasonable."  66 Fed. Reg. 53052, 53055 (October 18, 2001).

The only Illinois case to consider what is required to state a claim under RESPA's antikickback provision was decided before HUD had issued both its 1999 and 2001 policy statements.  See 
Shah v. Chicago Title & Trust Co.
, 102 Ill. App. 3d 787, 789, 430 N.E.2d 342 (1981).
(footnote: 4)  In 
Shah
, the court stated, "[t]o plead a cause of action under the antikickback provision of RESPA, the plaintiffs must allege first, an agreement between the parties to refer settlement service business, second, the transfer of a thing of value, and third, the referral of settlement service business."  
Shah
, 102 Ill. App. 3d at 789.  The problem with the court's holding in 
Shah
 is that it seems to be based upon the notion, dispelled after HUD's 1999 and 2001 policy statements, that all referral fees paid to a broker violate RESPA's antikickback provision, with no exemptions.  

Based on the above principles, we hold that in order to state a claim under the Consumer Fraud Act based upon the payment of a YSP by a lender to a broker in violation of RESPA's antikickback provision, a plaintiff must comply both with the elements set forth in 
Shah
 and the requirements found in HUD's 1999 and 2001 policy statements.  In other words, a plaintiff must allege (1) the existence of an agreement between the lender and broker whereby the broker promises to refer settlement service business to the lender; (2) the transfer of a thing of value between the lender and broker based upon that agreement; (3) the referral of settlement service business by the broker to the lender (s
ee 
Shah
, 102 Ill. App. 3d at 789), and either that (4) 
the broker received a YSP without providing any goods or services of the kind typically associated with a mortgage transaction or (5) if the broker did provide such goods or services, the total compensation paid to the broker was not reasonably related to the total value of the goods or services actually provided (see 
Heimmermann
, 305 F.3d at 1263-64; 
Schuetz
, 292 F.3d at 1011-13; 
Glover
, 283 F.3d at 964).
(footnote: 5)  
  
   

Matrix argues that plaintiffs' allegations fall short here because they (1) admitted in their complaint that Dolphin provided services in procuring the mortgage from Matrix 
and (2)  made "no allegation that the total compensation received by other brokers in similar transactions is much lower than the compensation received by Dolphin in this case."  We agree.  

 Plaintiffs's complaint stated that Dolphin "had contracted for and received other compensation for its services as a mortgage broker *** by the payment of fees out of the loan proceeds."  
By alleging that Dolphin did, indeed, perform "services as a mortgage broker
," plaintiffs conceded the first step in HUD's test; namely, that the broker provided goods or services of the kind typically associated with a mortgage transaction.  See 
Heimmermann
, 305 F.3d at 1263-64; 
Schuetz
, 292 F.3d at 1011-13; 
Glover
, 283 F.3d at 964.  For plaintiffs to 
state a claim under RESPA, therefore, they needed to allege that the total compensation paid to the broker was not reasonably related to the total value of the goods or services actually provided.
  See 
Heimmermann
, 305 F.3d at 1263-64; 
Schuetz
, 292 F.3d at 1011-13; 
Glover
, 283 F.3d at 964.  

In their third-amended complaint, plaintiffs alleged that "[u]nbeknownst" to them, Matrix "had offered to pay a kickback of $4,149.86 to [Dolphin] in order to induce [Dolphin] to refer the loan to Matrix and to secretly raise the interest rate of the loan above the 8.75% for which Plaintiffs were qualified"; the
 "$4,149.86 as a [YSP] paid by Matrix to Dolphin was unreasonable and was paid simply for the referral of business, not as compensation for goods, facilities, or services performed"; and the "$4,149.86 could not be anything other than a fee for referral of business and not as bona fide compensation."
  Plaintiffs failed, however, to
 list the services, goods, or facilities provided by Dolphin, explain how the YSP payment was not related to any of these services, goods, or facilities, or state why Dolphin's total compensation was unreasonable, i.e. through market price comparison.  Plaintiffs' complaint simply does not contain enough facts to support a claim under RESPA's antikickback provision
.  

Plaintiffs, citing 
Watson v. CBSK Financial Group, Inc.
, No. 01 CV 4043 (N.D. Ill. 2002), and 
Michalowski
, No. 01 CV 6095,
 argue that "assessing whether a particular YSP passes muster in a given transaction is a very fact-intensive exercise, and therefore unlikely to be resolved in a motion to dismiss."
  
The courts in both 
Watson
 and 
Michalowski
, however, were operating under the federal "notice-pleading" standard; Illinois, of course, is a fact-pleading jurisdiction.  See 
People ex rel. Madigan v. Tang
, 346 Ill. App. 3d 277, 805 N.E.2d 243 (2004) (noting the difference between the federal notice-pleading standard and Illinois' fact-pleading standard and recognizing that the burden is heavier on a pleader under the latter standard).  
Under Illinois' standard, the pleader is required to set out ultimate facts that support his or her cause of action (see 
Edelman, Combs & Latturner v. Hinshaw & Culbertson
, 338 Ill. App. 3d 156, 168, 788 N.E.2d 740 (2003)); notice pleading, conclusions of law, and conclusions of fact are insufficient (
Schal Bovis, Inc. v. Casualty Insurance Co.
, 314 Ill. App. 3d 562, 574, 732 N.E.2d 1082 (1999)).  

Though plaintiffs alleged that the YSP paid to Dolphin was unreasonable, they failed to allege why the YSP was unreasonable or how Dolphin's total compensation was not reasonably related to the services it provided.  While this "unreasonableness" determination may indeed be "fact intensive," plaintiffs still must allege sufficient facts to establish each element under RESPA's antikickback provision.  Because plaintiffs failed to do so, they cannot rely upon RESPA as the basis for their claim under the Consumer Fraud Act.     

Plaintiffs also argue that the payment of the YSP to Dolphin constitutes an unfair or deceptive practice under the Consumer Fraud Act irrespective of whether the YSP payment violated RESPA's antikickback provision.  While plaintiffs' argument has some initial appeal, in the end, it fails.

Section 2616 of RESPA states:

"This chapter does not annul, alter, or affect, 

or exempt any person subject to the provisions of this chapter from complying with, the laws of any State with respect to settlement practices, except to the extent 

that those laws are inconsistent with any provision of 

this chapter, and then only to the extent of the inconsistency.  The Secretary is authorized to determine whether such inconsistencies exist.  The Secretary may 

not determine that any State law is inconsistent with 

any provision of this chapter if the Secretary determines that such law 
gives greater protection to the consumer
."  

(Emphasis added.) 12 U.S.C. § 2616 (2000).

Under section 2616, it is possible for a broker to comply with the mandates of RESPA and, yet, still be liable under state law if that law "gives greater protection to the consumer."  12 U.S.C. § 2616 (2000).  Section 2616 can be characterized as a consumer-friendly "anti-preemption" provision, which ensures that a consumer can still seek redress for a broker's conduct in connection with settlement practices under state law even if that broker fully complied the tenets of RESPA.  
 

Here, plaintiffs argue that they stated a claim under the Consumer Fraud Act even if the YSP payment made by Matrix to Dolphin did not violate RESPA's antikickback provision.  Section 10b of the Act states, however, "[n]othing in this Act shall apply to *** [a]ctions or transactions specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States."  815 ILCS 505/10b (1) (West 2000).  "Actions specifically authorized by RESPA satisfy section 10b (1) of the Consumer Fraud Act because they are '[a]ctions or transactions specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States
.'"  
Weatherman v. Gary-Wheaton Bank of Fox Valley
, 186 Ill. 2d 472, 488, 713 N.E.2d 543 (1999), quoting 815 ILCS 505/10b (1) (West 1992)
.  In other words, if the YSP payment to Dolphin by Matrix was not violative of RESPA's antikickback provision, plaintiffs have no recourse under the Consumer Fraud Act; the reach of the Consumer Fraud Act simply does not extend beyond that of RESPA.  See 
Weatherman
, 186 Ill. 2d at 489 (stating that "defendant's compliance with RESPA is a defense to liability under section 10b (1) of the Consumer Fraud Act").  Because plaintiffs failed to state a claim under RESPA's antikickback provision, the circuit court properly dismissed their claim under the Consumer Fraud Act. 

III.  BREACH AND INDUCEMENT TO BREACH FIDUCIARY DUTY CLAIMS

Plaintiffs next argue that the circuit court erred in dismissing their claims against (1) Dolphin for breach of fiduciary duty and (2) Matrix for inducing Dolphin's breach.  Plaintiffs alleged that Dolphin "engaged in self dealing and failed to disclose to Plaintiff that Dolphin was going to receive a kickback for referring the loan to [Matrix] and raising the interest rate."  Matrix, on the other hand, "induced [Dolphin] to breach its fiduciary duty by offering" this kickback to Dolphin.   Initially, we find that plaintiffs have waived this issue by failing to cite any legal authority or reference a single page in the record to support their argument.  See 188 Ill. 2d R. 341(e)(7).  "The appellate court is not a depository in which the appellant may drop the burden of argument and research" and "[a]rguments which do not satisfy the requirements of Supreme Court Rule 341(e)(7) do not merit consideration on appeal."  
In re Marriage of Winton
, 216 Ill. App. 3d 1084, 1090, 576 N.E.2d 856 (1991), citing 
Rockford Memorial Hospital v. Schueler
, 167 Ill. App. 3d 358, 362, 521 N.E.2d 251 (1988).   

However, even if plaintiffs had not waived this issue, the circuit court properly dismissed their claims for breach and inducement to breach fiduciary duty.  In order to state a claim for breach of fiduciary duty, it must be alleged that a fiduciary duty exists, that the fiduciary duty was breached, and that such breach proximately caused the injury of which the plaintiff complains.  
International Capital Corp. v. Moyer
, 347 Ill. App. 3d 116, 122, 806 N.E.2d 1166 (2004).  Likewise, a third party who colludes with a fiduciary in committing a breach of duty, induces or participates in such a breach, and obtains benefits therefrom is directly liable to the aggrieved party.  
Regnery v. Meyers
, 287 Ill. App. 3d 354, 364, 679 N.E.2d 74 (1997).

Assuming, 
arguendo
, that Dolphin owed a fiduciary duty to plaintiffs (which Dolphin conceded in its brief), because plaintiffs failed to state a claim under RESPA's antikickback provision, their allegation that Dolphin breached their fiduciary duty fails.  Consequently, plaintiffs' allegation that Matrix induced Dolphin to breach that duty also fails.

For the reasons stated above, we find that the circuit court properly dismissed plaintiffs' third-amended complaint. 

Affirmed.            

GREIMAN and THEIS, JJ., concur.

FOOTNOTES
1:
A "yield spread premium is a payment from the lender to the broker for delivering a loan with an interest rate above a preset 'par' rate.  The amount of the premium is determined from a rate sheet provided by the lender; the higher the interest rate is above the par (or market rate), the higher the yield spread premium that the broker receives."  
Watson v. CBSK Financial Group, Inc.
, No. 01 CV 4043 (N.D. Ill. 2002).    

2: The alleged interest rate that Dolphin obtained for plaintiffs has varied.  In each of the three versions of their complaint filed in the circuit court, plaintiffs alleged that the interest rate was 9.9524%.  In their opening brief, that rate dropped to 9.5%.  At oral argument, plaintiffs' counsel conceded that the actual figure was 9%.  Plaintiffs' alleged amount of damages ($52,500) was based upon the rate of 9.9524%, rather than the actual rate of 9%; a rate which, we note, was only .25% more than what plaintiffs claimed they were qualified to receive.

3:
The Seventh Circuit has ruled that HUD policy statements relating to a different RESPA provision (12 U.S.C. § 2607(b)(2000)) are not entitled to the deference normally accorded to a federal agency's interpretation of the statute under its charge pursuant to 
Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.
, 467 U.S. 837, 842-44, 81 L. Ed. 2d 694, 702-03, 104 S.Ct. 2778, 2781-82 (1984).  See 
Krzalic v. Republic Title Co.
, 314 F.3d 875, 879-881 (7th Cir. 2002).  However, our supreme court has stated:

"We accord considerable deference to a federal agency's interpretation of a federal statute, provided that its interpretation is reasonable and Congress has not expressed a contrary intent."  
Weatherman v. Gary-Wheaton Bank of Fox Valley, N.A.
, 186 Ill. 2d 472, 483, 713 N.E.2d 543 (1999).  

Specifically, in the context of regulations issued by HUD concerning its interpretations of RESPA, the court found that Congress "clearly expressed its determination to treat HUD's regulations as authoritative."  
Weatherman
, 186 Ill. 2d at 483, citing 12 U.S.C. § 2617(b) (1994).  Accordingly, we give "considerable deference" to HUD's policy statements in this case.

4: We note that in 
Novakovic v. Samutin
, No. 1-03-1382, slip op. at 2 (November 12, 2004), a case in which oral argument was held on the same day as the case at bar, this panel addressed a claim brought pursuant to RESPA's antikickback provision.  In 
Novakovic
, we reversed summary judgment entered for the mortgage company, finding that there were genuine issues as to whether (1) an individual who received a YSP payment from the mortgage company was an employee of the mortgage company and (2) the payment qualified as a secondary market transaction, both of which would be exempt under RESPA's safe harbor provision.  See 
Novakovic
, No. 1-03-1382, slip op. at 14. 

5: We note that numerous federal courts have found that violations of RESPA's antikickback provision are not "amenable to a class action."  See 
Glover, 
283 F.3d at 965-66; 
Cedeno v. Firestone Mortgage Company
, No. 01 C 5110, slip op. at 6 (N.D. Ill. 2002) (collecting cases).  Because the parties have not raised the issue, we express no opinion as to whether a claim brought under the Consumer Fraud Act based upon the payment of a YSP in violation of RESPA's antikickback provision can be maintained as a class action.