2024 IL App (1st) 230102

First District
Third Division
June 5, 2024

No. 1-23-0102

|  |  |  |
|---|---|---|
| | ) | |
| COUNCIL FOR JEWISH ELDERLY, d/b/a Lieberman | ) | |
| Center for Health and Rehabilitation, | ) | |
| | ) | Appeal from the Circuit Court |
| Plaintiff-Appellee, | ) | of Cook County. |
| | ) | |
| v. | ) | No. 2016 L 8894 |
| | ) | |
| JULIA KURTZ, Individually and as Independent | ) | The Honorable |
| Administrator of the Estate of Frank Kurtz, Deceased, | ) | Jeffrey Warnick, |
| | ) | Judge Presiding. |
| Defendants-Appellants. | ) | |
| | ) | |

PRESIDING JUSTICE REYES delivered the judgment of the court, with opinion.
Justices Lampkin and Van Tine concurred in the judgment and opinion.

**OPINION**

¶ 1        From September 2013 until June 2018, decedent Frank Kurtz (Frank) was a resident at

plaintiff Council for Jewish Elderly, doing business as Lieberman Center for Health and

Rehabilitation (Lieberman), a skilled nursing facility in Skokie. Lieberman filed suit against

Frank (and, subsequently, his estate) and his wife, Julia Kurtz (Julia), alleging that Lieberman

had not been paid for the services provided to Frank. The trial court granted partial summary

judgment in favor of Lieberman, finding in its favor as to liability, and the issue of damages

proceeded to a jury trial. The jury returned a verdict of $496,861, and after a prove-up hearing

in which the trial court deducted certain amounts paid by other payor sources, the trial court

entered a final judgment in the amount of $306,923.84. On appeal, Julia[1] contends that the trial

_____

[1]While Julia is a defendant both in her individual capacity and in her capacity as special
administrator of Frank's estate, we refer to her in the singular for the sake of simplicity.

court erred in (1) granting summary judgment on the issue of liability in favor of Lieberman, (2) making certain rulings on evidentiary matters, and (3) determining the damages award. For the reasons set forth below, we reverse.

¶ 2                                BACKGROUND

¶ 3          *Admission, Medicaid Application, and Administrative Proceedings*

¶ 4          On September 12, 2013, Frank, who suffered from Lewy body dementia, was admitted to Lieberman, a 240-bed skilled nursing care facility located in Skokie, where he resided until June 23, 2018. At the time of Frank's admission, Lieberman's room rate for private-pay patients was $330 per day, a rate which increased several times during Frank's time at the facility. Between September 2013 and November 2014, there is no dispute that Lieberman received payment for its services from various sources. After November 1, 2014, it is undisputed that neither Frank nor his estate made any further payments for his stay.

¶ 5          On December 30, 2014, Julia applied for Medicaid on behalf of Frank, thereby seeking assistance in paying for Frank's medical and nursing care. On February 24, 2017, Frank received a conditional approval from the Illinois Department of Human Services (DHS), the state entity responsible for determining Medicaid eligibility, and the Illinois Department of Healthcare and Family Services (HFS), the state entity responsible for administration of Medicaid benefits. The approval, which was retroactive to September 1, 2014, indicated that DHS had determined that Frank was eligible for medical assistance but that the State would not immediately pay for his long-term care for two reasons. First, DHS calculated that, based on Frank's income and resources, he had $266,360.60 available to apply toward his medical care costs. Accordingly, Frank's approval was subject to a "spenddown" requirement that, "[s]tarting 09/2014, you will owe the facility where you live $266,360.60 each month [*sic*]

2

unless changes occur or you use other medical bills or receipts to reduce this amount." Additionally, DHS determined that, "because of a non-allowable transfer of resources," a "penalty period" of 11 months and 27 days applied, during which time the State would not pay for Frank's care.

¶ 6    Julia appealed both the spenddown and penalty provisions to DHS, and on March 30, 2018, DHS issued an administrative decision affirming the approval of long-term care benefits subject to a penalty provision but remanding for recalculation of the penalty provision. As part of its decision, DHS adopted the hearing officer's findings of fact, one of which was that DHS and Julia "agreed that [Frank] had met the resource spenddown amount." Julia further appealed the DHS decision to the circuit court of Cook County in case No. 2018 CH 05814, and judgment in her favor was entered on March 30, 2021, with the circuit court finding that the imposition of a penalty period was inappropriate. While DHS initially appealed the finding to this court (appeal No. 1-21-0469), it ultimately voluntarily dismissed its appeal in late 2021.

¶ 7    Shortly before Julia commenced the Medicaid application process, on September 22, 2014, Lieberman issued a notice of involuntary transfer and discharge to Frank due to nonpayment. Julia filed a request for an administrative hearing, and on June 10, 2018, the Illinois Department of Public Health (DPH) issued an administrative decision permitting the involuntary transfer and discharge.[2] In its decision, DPH adopted the administrative law judge's findings of fact, including the reliance on the February 2017 Medicaid letter which imposed the $266,360.60 spenddown; there was no reference to the March 2018 DHS decision, and it appears that this decision was not presented as evidence during the hearing. Julia appealed the DPH decision to

---

[2]We note that Frank was not ultimately involuntarily discharged, as he was hospitalized on June 23, 2018, and did not return to Lieberman before his death on September 4, 2018.

the circuit court of Cook County in case No. 2018 CH 07977, and the circuit court affirmed the decision on February 8, 2021, finding, in part, that Julia had failed to provide evidence that Frank had satisfied the spenddown requirement. Julia further appealed to this court, which affirmed the circuit court's decision.[3] *Estate of Kurtz v. Illinois Department of Public Health*, 2023 IL App (1st) 210236-U.

¶ 8                                    *Complaint*

¶ 9        In 2016, while Julia's Medicaid appeal and Lieberman's attempt to involuntarily discharge Frank were pending, Lieberman filed a complaint against Frank and Julia in the circuit court of Cook County, alleging that Lieberman had not been paid for services provided to Frank. The complaint was amended several times, and the final complaint, filed November 5, 2019, ultimately alleged causes of action against Frank's estate for (1) breach of contract, (2) *quantum meruit*, and (3) unjust enrichment, as well as a count against Julia individually for (4) liability pursuant to the Rights of Married Persons Act (Family Expense Act) (750 ILCS 65/15 (West 2014)).[4]

¶ 10       In her answer and affirmative defenses, Julia alleged that there existed an agreement between HFS, as administrator of the Medicaid program in Illinois, and Lieberman which

---

[3]While the circuit court order in the DPH administrative review proceedings does not appear to be contained in the record on appeal, as noted, both the DHS and DPH orders were subsequently appealed, and we take judicial notice of the filings in those appeals. See *People v. Torres*, 2019 IL App (1st) 151276, ¶ 36 (we may take judicial notice of court records in related cases); see also *In re N.G.*, 2018 IL 121939, ¶ 32 (it was "well within the appellate court's authority" to take judicial notice of court records from a prior prosecution).

[4]We note that the official name of this statute is the Rights of Married Persons Act. See 750 ILCS 65/0.01 (West 2014). Our supreme court, however, has referred to it as the Family Expense Act (see, *e.g.*, *Lewis v. Lead Industries Ass'n*, 2020 IL 124107, ¶ 11), and that name was used in the proceedings below and on appeal. Under this statute, family expenses are chargeable to both spouses, so if Frank was found to have owed Lieberman for his stay, those expenses would be chargeable to Julia. See 750 ILCS 65/15(a)(1) (West 2014); *Carlton at the Lake, Inc. v. Barber*, 401 Ill. App. 3d 528, 533 (2010).

prevented Lieberman from obtaining a judgment against Julia in connection with the expenses incurred during Frank's stay. Specifically, Julia alleged that, as a patient who had been approved for Medicaid coverage, Frank had no obligation to Lieberman as a private-pay patient and Lieberman was barred from seeking such payment from him or, later, from his estate.[5] Julia further alleged that Lieberman failed to apply in a timely fashion for reimbursement for any care provided to Frank while he was Medicaid-eligible, so its failure to receive payment "is due to [its] own negligence and malpractice."

¶ 11                                    *Motion for Summary Judgment*

¶ 12        In July 2021, Lieberman filed a motion for summary judgment, claiming that there were no genuine issues of material fact as to any of the counts of its complaint and that it was entitled to judgment in the amount of $448,427 plus attorney fees. With respect to the availability of Medicaid coverage, Lieberman asserted that "not only did Frank Kurtz never satisfy his spenddown requirement, he has still never met his penalty period" and, therefore, "although conditionally approved for Medicaid, [Frank] never became covered by Medicaid to pay for his care at Lieberman." As such, Lieberman contended that Frank remained responsible for paying for his own care.

¶ 13        Attached to its motion for summary judgment were, *inter alia*, deposition transcripts from DHS and HFS officials in which they explained the process for determinations of Medicaid eligibility for long-term care patients. In short, the initial determination of Medicaid eligibility was made by DHS, but the administration of those benefits was handled by HFS. In making

---

[5]At the same time that she filed her answer to Lieberman's amended complaint in November 2018, Julia also sought to file a third-party complaint against DHS based on the March 2018 DHS decision. The trial court entered and continued her motion to file the third-party complaint in an undated order shortly thereafter, and there does not appear to ever have been a ruling on her motion, as Julia included the failure to rule on the motion as a basis for a motion for substitution of judge which she filed in July 2020.

the initial determination, DHS would consider the applicant's income and resources and, if these were higher than the eligibility threshold, DHS would approve the applicant's Medicaid application subject to a spenddown (or resource reduction) requirement, which required the applicant to deplete his or her resources through payment to the long-term care facility or through other eligible medical expenses before Medicaid would pay for the applicant's long-term care. DHS used a mathematical formula, based on the long-term care facility's daily rate, to determine when the applicant was scheduled to have satisfied the spenddown requirement and did not independently verify whether the facility had received payment. If, however, an applicant submitted proof of medical expenses, those expenses would be used in reducing the applicant's "countable income," which had an indirect impact on the spenddown requirement.[6] In addition, if DHS determined that the applicant had improperly transferred assets during the five-year period prior to the Medicaid application, DHS would convert the value of the improperly transferred assets into a time period, based on the long-term care facility's rate, and the applicant would not be entitled to coverage during this "penalty period."

¶ 14        Once the applicant was eligible for Medicaid, HFS handled the administration of benefits; HFS was not involved in the determination or verification of the applicant's eligibility. In order for a long-term care facility to be paid through Medicaid, the facility was required to complete an "admit pack" which, in essence, informed HFS that the facility had a patient in its care for whom it was intending to submit a Medicaid claim; as part of the admit pack, the applicant would receive a "TAN" or "transaction audit number," representing a successful transaction in

_____

[6]As explained by the DHS representative, medical expenses could only be used toward reducing the applicant's "countable income." If the medical expenses were greater than the applicant's income, however, then the applicant would necessarily have to pay for them from his or her available resources, which would then lower the amount of those resources, thereby indirectly impacting the spenddown requirement.

the computer system. Absent the completion of the "admit pack," the facility would not be able to file a Medicaid claim. An admit pack, however, would not be processed until an applicant was eligible for Medicaid; if the applicant's eligibility was subject to a spenddown or penalty, a previously submitted admit pack would remain in "pending" status until the spenddown or penalty was satisfied. Additionally, a facility was required to file a claim within a certain time of the date of service and would not be paid for services outside that range.

¶ 15    In Frank's case, both the DHS and HFS officials testified that the DHS documentation indicated that Frank's spenddown had been satisfied as of early 2017. Neither official, however, was involved with the initial determination as to Frank's eligibility and had not reviewed any medical receipts or other documentation submitted to the agencies by Julia.

¶ 16    It should be noted that attached to Lieberman's motion for summary judgment was the certified record of the DPH administrative proceedings, which included a number of documents submitted as exhibits by Lieberman's attorney in April 2018, including the initial February 2017 Medicaid approval letter, along with a "Nursing Home/Supportive Living Facility Calculation" (HFS 2500 form), which set forth that as of September 2014 Frank had $266,360.60 in available resources and the spenddown amount was $266,360.60; on the HFS 2500 form, it indicated that "you have $266,360.60 available to apply toward the cost of your care at the facility where you are living. Healthcare and Family Services will pay any remaining cost up to its payment rate. If your resources or income change, notify the local Family Community Resource Center (FCRC) immediately." The documents submitted by Lieberman's attorney also included three additional HFS 2500 forms, all dated December 1, 2017, which provided that (1) beginning in January 2017, Frank had $18,348.36 in available resources and the spenddown amount was $18,348.36; (2) beginning in February 2017, Frank

7

had $8770.32 in available resources and the spenddown amount was $0; and (3) beginning in March 2017, Frank had $2077.96 in available resources and the spenddown amount was $0.

¶ 17    In response to Lieberman's motion for summary judgment, Julia contended that numerous questions of material fact existed. Specifically, Julia claimed that Frank's mental capacity to enter into a contract with Lieberman was in dispute and further maintained that Frank's spenddown for Medicare coverage had been reduced to $0 after she provided DHS and HFS with proof that she had spent $349,000 on Frank's medical care. In support, Julia attached excerpts from the administrative record of the DHS proceedings, which included a representation from a DHS financial recovery coordinator that Julia had submitted proof of medical expenses and that DHS notices indicated that the spenddown had been satisfied. Julia also noted that there was no evidence that Lieberman had even attempted to file a Medicaid claim and, therefore, summary judgment should not be granted where Lieberman had not taken the steps necessary to receive payment.

¶ 18    On November 4, 2021, the trial court entered an order (1) denying summary judgment on the breach of contract count, (2) granting summary judgment as to liability on the remaining three counts, and (3) denying summary judgment as to damages on those three counts; the record does not contain a transcript of the summary judgment hearing.

¶ 19    Julia filed a motion to reconsider, contending that liability under counts II through IV of the complaint depended on Frank's status as a Medicaid patient and that the trial court erred in granting summary judgment "as though liability and Medicaid were two entirely independent matters." Julia further argued that she had presented evidence, namely, portions of the DHS administrative record, to establish that Frank had satisfied the spenddown requirement and that Lieberman's reliance on testimony from two DHS and HFS representatives about the agencies'

general practices did not contradict the evidence presented about Frank's specific case. In response, Lieberman maintained, in relevant part, that Medicaid eligibility and coverage related to damages, not liability, "and will be properly addressed at trial." The trial court denied Julia's motion to reconsider on January 4, 2022.

¶ 20                                    *Pretrial Proceedings*

¶ 21        On February 15, 2022, Lieberman voluntarily dismissed the breach of contract count, and the parties proceeded to prepare for trial on damages with respect to the three remaining counts.

¶ 22        On July 11, 2022, Julia filed a motion to vacate the order granting summary judgment in favor of Lieberman as to liability. In her motion, Julia claimed that, contrary to its position in the summary judgment proceedings, Lieberman had, in fact, ultimately been successful in filing a Medicaid claim for Frank's care and had been paid for its services. Specifically, Julia asserted that on January 26, 2022, Lieberman filed a claim for the entire period at issue— November 1, 2014, through June 23, 2018—and was able to collect partial payment for services provided from April 1, 2017, through June 23, 2018. Moreover, the only reason Lieberman was not permitted to recover for the entire period was due to its delay in submitting an admit pack. Julia maintained that this demonstrated that Lieberman's position as to Frank's "unmet" spenddown and penalty was not accurate and further established that Lieberman had failed to prevent its own damages.

¶ 23        In support of her argument, Julia attached an e-mail to Lieberman from a DHS caseworker which provided, in relevant part:

> "The eligibility for this customer begins on 9/1/14, as the application date was 12/30/14 with 3 months of backdating. While the customer did have eligibility, the admit for him was late. TAN 201707210522024 was submitted on 3/13/17 with an admit requested

9

date of 4/3/14. Per policy, facilities have 45 days from the date of admission to submit an admit TAN. If the TAN is submitted after 45 days of requested admission, the date of submission must be used as the admit date in [the computer system]. So the earliest the admit can be put into the system is 3/13/17. The only way around this is if there was an earlier TAN that was submitted that was within the 45 day timeframe. I looked in our system for one, but I did not see one. If you have another TAN from 2014 please send it to me."

¶ 24    In addition, the parties submitted motions *in limine* concerning the evidence to be presented at trial. As relevant to the instant appeal, Lieberman requested that Julia be barred from presenting argument or evidence concerning Lieberman's purported failure to submit an admit pack or seek payment from Medicaid, which formed the basis of her mitigation of damages defense. Lieberman also requested, more generally, that Julia be barred from "offering testimony, evidence or argument related in any way to the potential liability of other payors and [Frank's] Medicaid applications, determinations, appeals, eligibility, claims, coverage and benefits." The trial court granted Lieberman's motions *in limine*, subject to reconsideration if Lieberman opened the door on those issues during trial. The trial court also barred a number of Julia's witnesses as not timely disclosed and denied her motion to vacate the summary judgment order. Finally, the trial court ordered that the question of the proper setoffs or reduction in damages would be reserved for a posttrial ruling by the court after the jury rendered its verdict as to the reasonable value of Lieberman's services.

¶ 25                                             *Trial*

¶ 26    Trial on Lieberman's damages commenced on July 18, 2022, and consisted of the testimony of two witnesses: Thomas Lockwood, chief financial officer of Lieberman, and

Julia. Lockwood's testimony established that, had Frank owed the applicable daily private-payor rate for each of the 1668 days of his stay, the total amount owed would be $595,104. Julia's testimony established that she had paid Lieberman $67,158 over the course of Frank's stay. The jury ultimately returned a verdict finding that the reasonable value of Lieberman's service, less the amount previously paid by Julia, was $496,861.

¶ 27                              *Posttrial Proceedings*

¶ 28        After trial, the parties submitted briefing as to the appropriate setoff amounts to be applied to the jury's verdict. In its brief, Lieberman claimed that the verdict should be set off by $189,937.16, which represented the amounts which Lieberman had received from other payor sources. By contrast, Julia contended that Lieberman was entitled to payment only for 881 days of service, as it had received payment for the rest of Frank's stay and it was prohibited from "balance billing" for those days. Accordingly, Julia argued that the jury's award should be reduced to $148,626.87, which was the amount owed for 881 days at the Medicaid rate or, in the alternative, $282,645, which represented 881 days at the private-pay rate.

¶ 29        The trial court ultimately found that the jury verdict should be reduced by $189,937.16 to reflect amounts received by Lieberman for Frank's care, resulting in a final judgment of $306,923.84 plus court costs. Julia filed a posttrial motion, which was denied, and this appeal follows.

¶ 30                                ANALYSIS

¶ 31        On appeal, Julia contends that the trial court erred in (1) granting summary judgment on the issue of liability in favor of Lieberman, (2) preventing her from presenting evidence to the jury concerning Lieberman's alleged failure to mitigate its damages, and (3) determining the

11

damages award. We commence with her argument concerning the granting of summary judgment.

¶ 32                                    *Summary Judgment Standard*

¶ 33        A circuit court is permitted to grant summary judgment only if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2020). The circuit court must view these documents and exhibits in the light most favorable to the nonmoving party. *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 315 (2004). We review a circuit court's decision to grant a motion for summary judgment *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992).

¶ 34        The party moving for summary judgment bears the initial burden of production, as well as the ultimate burden of proof. *Country Mutual Insurance Co. v. Hilltop View, LLC*, 2013 IL App (4th) 130124, ¶ 23. The movant may meet his burden of proof either by affirmatively demonstrating that some element of the case must be resolved in his favor or by establishing that there is an absence of evidence to support the nonmoving party's case. *Nedzvekas v. Fung*, 374 Ill. App. 3d 618, 624 (2007). The party moving for summary judgment need not prove its case or disprove the nonmovant's case. *Berke v. Manilow*, 2016 IL App (1st) 150397, ¶ 31. Rather, the movant is entitled to summary judgment by demonstrating the absence of a genuine issue of material fact, while the nonmovant may defeat summary judgment by demonstrating that a question of material fact exists. *Id.* While the nonmoving party is also not required to prove her case at the summary judgment stage, she must come forth with some evidence which would arguably entitle recovery at trial. *Id.* Only when the movant produces evidence that, if

uncontradicted, would entitle it to a directed verdict at trial does the burden of production shift to the nonmovant. *Hilltop View, LLC*, 2013 IL App (4th) 130124, ¶ 24.

¶ 35　　　　Summary judgment is a drastic remedy, which results in the disposition of a case without trial. *Brayboy v. Advocate Health & Hospital Corp.*, 2024 IL App (1st) 221846, ¶ 22. Accordingly, a court must construe the evidence in the record strictly against the movant and should grant summary judgment only if the movant's right to judgment is "clear and free from doubt." *Monson v. City of Danville*, 2018 IL 122486, ¶ 12. The purpose of summary judgment is not to try a question of fact but to determine whether a genuine issue of material fact exists. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 42-43 (2004). A court must therefore be cautious in awarding summary judgment "in order to avoid preempting a litigant's right to a trial in which the litigant may fully present the factual basis of his or her case." *Schuster v. Occidental Fire & Casualty Co. of North America*, 2015 IL App (1st) 140718, ¶ 16.

¶ 36　　　　Our supreme court has explained that a genuine issue of material fact exists where the material facts are disputed or, if undisputed, where reasonable persons could draw different inferences from the undisputed facts. *Monson*, 2018 IL 122486, ¶ 12. In determining whether a genuine issue of material fact exists, as noted, a court must construe the evidence strictly against the movant and liberally in favor of the opponent. *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008). "Simply put, if the record reveals a dispute as to any material issue of fact, summary judgment must be denied, regardless of the lower court's belief that the movant would or should prevail at trial." *Brayboy*, 2024 IL App (1st) 221846, ¶ 22. However, mere speculation, conjecture, or guess is insufficient to withstand summary judgment. *Sorce v. Naperville Jeep Eagle, Inc.*, 309 Ill. App. 3d 313, 328 (1999).

¶ 37                    *Summary Judgment Determination*

¶ 38        In this case, Julia contends that the trial court erred by entering summary judgment as to liability with respect to counts II through IV of Lieberman's complaint.

¶ 39                         Sufficiency of Record

¶ 40        As an initial matter, Lieberman contends that Julia has failed to provide a sufficiently complete record to support her claims of error, as there was no transcript of the summary judgment hearing. It is well settled that an appellant has the burden of presenting a sufficiently complete record to support her claims of error, and in the absence of such a record, "it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis." *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). Here, however, we cannot find that the lack of a transcript hinders our review of the issues on appeal. Lieberman's motion for summary judgment is properly included in the record on appeal, as is Julia's response. As noted, we review the trial court's ultimate decision on the motion *de novo*, which means that we owe no deference to the trial court's reasoning or rationale. See *People v. Jackson*, 2021 IL App (1st) 190263, ¶ 38 ("Under a *de novo* standard of review, the reviewing court owes no deference to the trial court's judgment or reasoning."). Moreover, to the extent that the trial court's reasoning is instructive, we note that there was a court reporter present at the hearing on Julia's motion to reconsider the grant of summary judgment and that the trial court reaffirmed its prior reasoning during that hearing. We find that the record is therefore adequate to support Julia's claims, and we proceed to consider the propriety of the trial court's grant of summary judgment.

¶ 41                              Theories of Liability

¶ 42        The trial court in the instant case granted summary judgment as to liability on Lieberman's *quantum meruit*, unjust enrichment, and Family Expense Act counts. Both *quantum meruit* and unjust enrichment are quasi-contractual legal theories based on a contract implied by law. *Stark Excavating, Inc. v. Carter Construction Services, Inc.*, 2012 IL App (4th) 110357, ¶ 37. In both cases, "the plaintiff must show that valuable services or materials were furnished by the plaintiff, [and] received by the defendant, under circumstances which would make it unjust for the defendant to retain the benefit without paying." *Hayes Mechanical, Inc. v. First Industrial, L.P.*, 351 Ill. App. 3d 1, 9 (2004). The measure of recovery for a *quantum meruit* claim is the reasonable value of the work provided, while in an unjust enrichment claim, the inquiry is focused on the benefit received and retained by the defendant. *Stark Excavating*, 2012 IL App (4th) 110357, ¶ 37. "Notably, even when a person has received a benefit from another, he is liable for payment only if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for him to retain it. The mere fact that a person benefits another is not of itself sufficient to require the other to make restitution therefor." (Internal quotation marks omitted.) *Hayes Mechanical*, 351 Ill. App. 3d at 9.

¶ 43        From Lieberman's perspective, the issue raised in its motion for summary judgment is a simple one: it is uncontroverted that Lieberman provided services to Frank, which he accepted, and it was not paid for those services. From Julia's perspective, however, the issue is more complicated. According to her, Frank was covered by Medicaid during the time Lieberman alleges it was unpaid and, therefore, Frank had no obligation to pay for Lieberman's services.

¶ 44        Our supreme court has observed that "[t]he Medicaid program is designed to prevent medical providers from becoming creditors of Medicaid recipients *** and to prevent

Medicaid recipients from becoming debtors by incurring any obligation to the provider." *Lewis v. Lead Industries Ass'n*, 2020 IL 124107, ¶ 38. As such, providers agree to accept the payment they receive from HFS as payment in full and may not otherwise seek payment from the Medicaid recipient. *Id.* Since the patient never becomes indebted to the medical provider, the patient has no legal obligation to pay for the services provided. *Id.* Accordingly, if Julia's position—that Frank was covered by Medicaid during the relevant time—is correct, then any obligation for payment would be borne by Medicaid, not by Frank, and Lieberman would not be entitled to recover any unpaid sums from Julia. We therefore disagree with the suggestion made by Lieberman below that the issue of Frank's entitlement to Medicaid was relevant only to damages, not to liability.

¶ 45                                Issue of Material Fact

¶ 46        The question, then, becomes whether there was a genuine issue of material fact as to Frank's eligibility for Medicaid during the relevant time. Lieberman contends that the evidence established that Frank's Medicaid eligibility was subject to spenddown and penalty provisions and that, until those provisions were satisfied, he remained responsible for any expenses he incurred. It further maintains that Julia's claims to the contrary were not supported by admissible evidence.

¶ 47        Evidence which would be inadmissible at trial is not admissible in support of or in opposition to a motion for summary judgment. *Complete Conference Coordinators, Inc. v. Kumon North America, Inc.*, 394 Ill. App. 3d 105, 108 (2009). In this case, we agree with Lieberman that much of the evidence set forth in Julia's response to the motion for summary judgment would not be admissible at trial, at least not without first establishing a proper foundation. We find, however, that there is enough presented through admissible evidence—

including from Lieberman's own exhibits—such that a genuine question of fact exists as to the scope of Frank's Medicaid eligibility.

¶ 48        The available evidence[7] establishes that Julia applied for Medicaid on Frank's behalf and that his application was approved in 2017, retroactive to September 2014. At the time of the approval, Frank's eligibility was conditioned on a $266,360.60 spenddown and a penalty period of nearly one year. Julia appealed both the spenddown and the penalty during the lengthy administrative review proceedings which followed. During the course of the appeals process, DHS documents—as well as (1) the deposition testimony of the DHS and HFS officials and (2) the DHS administrative decision—indicated that the spenddown had been satisfied as of early 2017. Notably, all of this evidence was available at the time of the filing of Lieberman's motion for summary judgment and was actually attached to Lieberman's motion. In fact, the certified administrative record of the DPH proceedings demonstrates that Lieberman's attorney had the HFS 2500 forms setting forth the satisfied spenddown as early as April 2018, three years prior to the filing of the motion for summary judgment. Lieberman, however, did not acknowledge this evidence in its motion for summary judgment and instead repeatedly argued that Frank's spenddown was "unpaid" or "never satisfied," based on the deposition testimony of the DHS and HFS officials.

¶ 49        While Lieberman points to the officials' testimony that the forms issued by DHS were based on a mathematical calculation and that DHS did not verify actual payment to the long-term care facility, it overlooks the fact that the DHS official testified that a Medicaid applicant's resource reduction calculation "no longer becomes theoretical when they submit a

---

[7]While Julia's arguments on appeal include references to facts arising after the filing of the motion for summary judgment, our analysis focuses only on the information provided in the pleadings, the motion for summary judgment, and the response.

medical expense or a bill that may be allowed to reduce their countable income." Indeed, the HFS 2500 forms all contain a statement instructing that, "[i]f your resources or income change, notify the local Family Community Resource Center (FCRC) immediately." Furthermore, at the end of the administrative review proceedings, the penalty period had been entirely removed, meaning that there were no longer any impediments to coverage. Thus, Julia's position that Frank became Medicaid-eligible during the relevant time period—at least at some point—has support in the record.

¶ 50          More importantly, Lieberman's position is based on its *interpretation* of the facts. There is, however, documentation in the record, as set forth above, which clearly and expressly indicates that Frank's Medicaid eligibility was not conditioned on any spenddown as of early 2017. Lieberman argues, in effect, that these documents should not be interpreted literally, as they were based on theoretical calculations instead of proof of actual payment. As noted, our supreme court has explained that a genuine issue of material fact exists where the material facts are disputed or, if undisputed, where reasonable persons could draw different inferences from the undisputed facts. *Monson*, 2018 IL 122486, ¶ 12. Here, Lieberman and Julia reasonably ascribe different meanings to the same documents, giving rise to a genuine issue of material fact. While the scope and extent of Frank's Medicaid coverage remains unclear, as noted, the purpose of summary judgment is not to try an issue of fact but to determine whether a triable issue of fact *exists*. *Adams*, 211 Ill. 2d at 42-43. Here, we cannot say that Lieberman's right to judgment against Julia is "clear and free from doubt" such that summary judgment was appropriate. *Monson*, 2018 IL 122486, ¶ 12. Accordingly, we must find that the trial court erred in granting summary judgment as to the issue of liability and remand for a trial on the matter.

¶ 51                                   *Other Bases for Relief*

¶ 52          Given our determination that a new trial is required, we have no need to consider Julia's

remaining arguments as to the conduct of the original trial. A trial on the issue of liability

would likely have an impact on the award of any resultant damages, as well, even if Lieberman

ultimately prevails. At a minimum, the trial court's challenged rulings with respect to

evidentiary matters would be affected by the existence of a trial involving the scope of Frank's

Medicaid coverage. We therefore reverse and remand the entirety of the matter—liability and

damages—for a new trial.

¶ 53                                        CONCLUSION

¶ 54          For the reasons set forth above, we find that the trial court erred in granting summary

judgment as to the issue of liability, where questions of fact remain as to Frank's Medicaid

eligibility.

¶ 55          Reversed and remanded.

*Council for Jewish Elderly v. Estate of Kurtz*, **2024 IL App (1st) 230102**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2016-L-8894; the Hon. Jeffrey Warnick, Judge, presiding. |
| **Attorneys for Appellant:** | Leon Zelechowski, of Leon Zelechowski, Ltd., of Chicago, for appellants. |
| **Attorneys for Appellee:** | Meredith A. Duncan, of Polsinelli PC, of Chicago, for appellee. |