2026 IL App (1st) 250027-U

Fourth Division
Filed January 29, 2026

No. 1-25-0027

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| JOHN'S PRO-TREE SERVICE, INC., | ) | Appeal from the |
|     Plaintiff-Appellant, | ) | Circuit Court of Cook County |
| | ) | |
|     v. | ) | No. 2024 L 009606 |
| | ) | |
| VILLAGE OF DOLTON, | ) | The Honorable Thomas More Donnelly, |
|     Defendant-Appellee. | ) | Judge, presiding. |
| | ) | |

JUSTICE OCASIO delivered the judgment of the court.
Presiding Justice Navarro and Justice Lyle concurred in the judgment.

**ORDER**

¶ 1    *Held*: (1) Plaintiff was not prejudiced by defendant's failure to properly designate its arguments in a combined motion to dismiss. (2) The Tort Immunity Act did not apply to plaintiff's contractual and quasi-contractual claims. (3) Defendant failed to carry its initial burden of showing that it was entitled to immunity, so plaintiff's claim for fraudulent misrepresentation should not have been dismissed. (4) Plaintiff's claims for breach of contract, *quantum meruit*, and promissory estoppel were properly dismissed as legally insufficient. (5) Plaintiff's claim for unjust enrichment was legally sufficient and should not have been dismissed.

¶ 2    Plaintiff, John's Pro-Tree Service, Inc. (JPTS), appeals the dismissal of its complaint against defendant, Village of Dolton (the Village), concerning an alleged agreement JPTS entered into through the Village's mayor, Tiffany A. Henyard, to provide tree-trimming and tree-removal services to the Village following severe weather events. On appeal, JPTS contends that (1) the

Village's combined motion to dismiss improperly comingled grounds for dismissal under sections 2-615 and 2-619 of the Code of Civil Procedure (735 ILCS 5/2-615, 2-619 (West 2024)) (the Code); (2) the Village was not immune under section 2-106 of the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/2-106 (West 2024)) (the Tort Immunity Act) because the transaction involved written communications; and (3) the complaint's various counts, alleging liability under distinct theories, were all legally sufficient.

¶ 3                                    I. BACKGROUND

¶ 4        According to the allegations of the complaint, following a severe storm, on or about June 6, 2023, Mayor Henyard and two employees from the Village's public works department (Stacey Carrel and John Conway) approached John Baio, president of JPTS, about performing emergency tree-trimming and tree-removal services in the Village. The complaint alleged, without further detail, that all three were "authorized representatives" of the Village. They agreed that the Village would pay JPTS $300 per tree trimmed and $1000 per tree removed. They arranged for the public works department to communicate which trees needed to be trimmed or removed through a combination of text messages to Baio and visible markings on the trees in need of service. JPTS trimmed 129 trees and removed 35 trees.

¶ 5        On July 19, JPTS submitted an invoice for $77,200 for the work it had done to date.[1] That same day, Baio and Henyard agreed that JPTS would continue providing trimming and removal services on an as-needed basis under essentially the same terms. On August 17, JPTS submitted an invoice for $155,000 for the work it had done since July 20. The next day, August 18, the Village paid the July invoice in full via check, and JPTS continued doing trimmings and removals.

¶ 6        On September 25, JPTS submitted an invoice for $226,900 for work done since August 21. That same day, Baio and Henyard "had a conversation" about JPTS's invoice being put on a "[w]arrant [l]ist" at the October meeting of the Village's board of trustees. Separately, one of the

---

[1]    At the alleged rate, this work should have earned JPTS only $73,700. The record does not explain the discrepancy. There are similar discrepancies with the other invoices.

trustees, Kiana Belcher, told Baio that, owing to budget restrictions, none of the Village's contractors were going to be paid for recent work. In October 2023, Baio sent text messages to Henyard and the village administrator about being paid for work already completed, but he never received responses.

¶ 7    On August 29, 2024, JPTS filed a six-count complaint that named the Village as the sole defendant. The complaint asserted claims for breach of contract, violation of the Local Government Prompt Payment Act (50 ILCS 505/1 *et seq.* (West 2024)) (the Prompt Payment Act), fraudulent misrepresentation, *quantum meruit*, unjust enrichment, and promissory estoppel. In response, the Village moved to dismiss the complaint under section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2024)). The motion to dismiss asserted that the Village was immune from liability based on Henyard's oral statements or misrepresentations under section 2-106 of the Tort Immunity Act (745 ILCS 10/2-106 (West 2024)). It also argued that, because Henyard did not have authority to contractually bind the Village, the complaint did not allege that JPTS had entered into a legally effective contract with the Village and that the remaining claims, with the exception of the claim for fraudulent misrepresentation, were legally insufficient for similar or related reasons. The Village's motion was not supported by any evidentiary materials beyond a two-page photocopy of certain provisions of the village code.

¶ 8    On December 11, 2024, the circuit court heard argument on the motion and then issued an oral ruling from the bench. According to an agreed statement of facts submitted by the parties, the court found that the Village was immune from liability and that the alleged contract was not enforceable because it had not been ratified by the board of trustees. It granted the Village's motion and dismissed the complaint with prejudice.

¶ 9                                    II. ANALYSIS

¶ 10    On appeal, JPTS challenges the dismissal of its complaint on both technical and substantive grounds. We review rulings on combined motions to dismiss under § 2-619.1 *de novo*, which

means that we conduct the same analysis that a trial judge would. *Kennedy v. City of Chicago*, 2022 IL App (1st) 210492, ¶ 16.

¶ 11                                    A.  The Combined Motion to Dismiss

¶ 12        Initially, JPTS argues that reversal is necessary because the Village's motion to dismiss did not properly designate the components of its combined motion to dismiss. Section 2-619.1 of the Code allows for combined motions to dismiss under sections 2-615 and 2-619 to be filed together as a single motion. 735 ILCS 5/2-619.1 (West 2024). "A combined motion, however, shall be in parts. Each part shall be limited to and shall specify that it is made under one of Sections 2-615, 2-619, or 2-1005. Each part shall also clearly show the points or grounds relied upon under the Section upon which it is based." *Id*.

¶ 13        A motion to dismiss brought pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2024)) attacks the legal sufficiency of a complaint by alleging defects on the face of the complaint. *American National Bank & Trust Co. v. City of Chicago*, 192 Ill. 2d 274, 279 (2000). When reviewing the legal sufficiency of a claim under section 2-615, the question is whether the complaint's allegations, viewed in the light most favorable to the nonmoving party, and accepting all well-pleaded and all reasonable inferences as true, adequately state a cause of action upon which relief can be granted. *Dratewska-Zator v. Rutherford*, 2013 IL App (1st) 122699, ¶ 14. However, a motion to dismiss under section 2-619.1 of the Code admits the legal sufficiency of the complaint but raises defects, defenses, or other affirmative matter, appearing on the face of the complaint or established by external submissions, that defeats the claim. *Orlak v. Loyola University Health System*, 228 Ill. 2d 1, 7 (2007).

¶ 14        JPTS argues that the Village's motion should have been rejected for failing to separately label each subpart under sections 2-615 or 2-619. While it is considered best practice for a lawyer to clearly specify whether a motion to dismiss is brought under section 2-615 or section 2-619, "the failure to do so may not always be fatal, but reversal is required if prejudice results to the nonmovant." *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 484 (1994). When confronted with

such omissions, reviewing courts generally evaluate the undesignated motion based on its grounds, the relief sought, and how it was addressed by the parties and the circuit court. *Id*.

¶ 15    Here, JPTS was not prejudiced by the Village's failure to properly designate its arguments in the combined motion to dismiss. In its reply in support of its motion to dismiss, the Village expressly identified which arguments were brought under section 2-619(a)(9) and which were brought under section 2-615, thereby remedying any deficiency. Specifically, the Village clarified that its argument invoking immunity under the Tort Immunity Act sought dismissal based on an affirmative matter under section 2-619, while its remaining arguments attacked the legal sufficiency of the complaint under section 2-615. These clarifications cured any prejudice that may have arisen from the Village's failure to properly designate each component of its combined motion to dismiss. Accordingly, the circuit court did not err by considering the Village's motion to dismiss.

¶ 16                            B.  The Tort Immunity Act

¶ 17    JPTS next contends the circuit court erred in finding that section 2-106 of the Tort Immunity Act shielded the Village from liability. JPTS argues that section 2-106 does not apply to this case because there were written directives—specifically, text messages—based on an alleged contract between the Village's employees and JPTS.

¶ 18    The Tort Immunity Act protects local entities and their employees from liability arising from government operations. 745 ILCS 10/1-101.1 (West 2024). By granting immunity, the legislature aimed to ensure that public funds would be used for their intended purposes rather than being diverted to pay damage claims. *Bubb v. Springfield School District 186*, 167 Ill. 2d 372, 378 (1995).

¶ 19    Although neither party raises the point, the Tort Immunity Act does not apply to every type of civil claim against a municipality.[2] Section 2-101(a) of the Tort Immunity Act states, in relevant

---

[2]    Normally, we would deem a point not raised to be forfeited. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). However, forfeiture is a limitation on the parties, not the court, and our "responsibility *** for a just result may sometimes override the considerations of [forfeiture]." *Li Jun Huang v. Uribe*, 2020 IL App (1st) 192037, ¶ 40. Because it would not be just to affirm on a basis that is plainly not supported by the governing statute, we exercise our discretion to overlook the forfeiture.

part, that the Act does not alter the potential liability of a local public entity or its employees when that liability is based on a contract. 745 ILCS 10/2-101(a) (West 2024). In other words, the Act's immunity does not shield public entities and its employees from claims based on a contract, allowing such claims to proceed according to standard contract law principles. That includes both express contracts and contracts implied by law. *Woodfield Lanes, Inc. v. Village of Schaumburg*, 168 Ill. App. 3d 763, 769 (1988). Here, five of the six counts in the complaint—breach of contract, violation of the Prompt Payment Act (which piggybacks off the breach claim), *quantum meruit*, unjust enrichment, and promissory estoppel—are grounded in contract, not in tort. See *Council for Jewish Elderly v. Kurtz*, 2024 IL App (1st) 230102, ¶ 42 ("Both *quantum meruit* and unjust enrichment are quasi-contractual legal theories based on a contract implied by law.").

¶ 20    That leaves fraudulent misrepresentation as the only claim that could be barred by the Tort Immunity Act. The Village maintains that it is immune under section 2-106, which provides that "[a] local public entity is not liable for an injury caused by an oral promise or misrepresentation of its employee, whether or not such promise or misrepresentation is negligent or intentional." 745 ILCS 10/2-106 (West 2024). The Village argues that it is not liable for any statement Mayor Henyard allegedly made to JPTS about payment, even if it was intentional or misleading. JPTS argues that section 2-106 immunity only extends to oral misrepresentations and that its claim relies, in part, on written text messages communicating which trees needed to be trimmed or removed. See *Lyons Township ex rel. Kielczynski v. Village of Indian Head Park*, 2017 IL App (1st) 161574 ¶ 26 (concluding that immunity did not apply to allegedly fraudulent activity based on a written contract); *ATC Healthcare Services, Inc. v. RCM Technologies, Inc.*, 282 F. Supp. 3d 1043 (N.D. Ill. 2017) (holding that the Tort Immunity Act's provision shielding local governments from liability for oral promises of misrepresentation did not apply to claims based on alleged written communications).

¶ 21    In principle, we agree with both parties. If the misrepresentation was made verbally, as the Village asserts, then it would be immune from liability. Conversely, if the misrepresentation was transmitted via text message or some other nonverbal means, the Village would not enjoy

immunity under section 2-106. But the complaint does not disclose the form which the alleged misrepresentation took. The only misrepresentation alleged by the complaint was that, in August 2023, Mayor Henyard "made misrepresentations" that the Village would pay JTPS for its services without disclosing that the Village did not have the funds it would need to pay vendors.

¶ 22 As the movant under section 2-619, the Village bore the initial burden of going forward by either showing that its immunity was "apparent on the face of the complaint" or by supplying "affidavits or certain other evidentiary materials" establishing that it was immune. *Epstein v. Chicago Board of Education*, 178 Ill. 2d 370, 383 (1997). The Village submitted no evidentiary material showing that the alleged misrepresentations were oral, so it can do no more than rely on what is apparent on the face of the complaint, which is to be construed in the light most favorable to JPTS, not to the Village. *Richter v. Prairie Farms Dairy, Inc.*, 2016 IL 119518, ¶ 18 ("In ruling on the motion, the circuit court must interpret all pleadings and supporting documents in the light most favorable to the nonmoving party."). And it is not apparent from the face of the complaint that the alleged misrepresentations were communicated orally as opposed to in writing. Hence, the Village did not meet its initial burden of showing that it was immune under the Tort Immunity Act. The involuntary dismissal of the fraudulent misrepresentation claim cannot be affirmed on the basis of immunity, at least not on the record before us at this very early stage of the litigation.

¶ 23 C. Legal Sufficiency of Complaint

¶ 24 Now we will address whether JPTS's complaint was legally sufficient. The complaint purports to raise six causes of action: (1) breach of contract, (2) violation of the Prompt Payment Act, (3) fraudulent misrepresentation, (4) *quantum meruit*, (5) unjust enrichment, and (6) promissory estoppel.

¶ 25 "A motion filed under section 2-615 of the Code (735 ILCS 5/2-615 (West 2020)) challenges the legal sufficiency of a complaint based on defects apparent on the face of the complaint." *M.U. ex rel. Kelly U. v. Team Illinois Hockey Club, Inc.*, 2024 IL 128935, ¶ 15. "A section 2-615 motion tests the legal sufficiency of the plaintiff's complaint, asking whether the allegations in the

complaint, construed in the light most favorable to the plaintiff, state sufficient facts to establish a cause of action upon which relief may be granted." *Project44, Inc. v. FourKites, Inc.*, 2024 IL 129227, ¶ 18. We take as true all well-pleaded facts in the complaint. *Rice v. Marathon Petrolium Corp.*, 2024 IL 129628, ¶ 22. A well-pleaded fact is a specific allegation, not a mere conclusion. *Daniel v. Chicago Transit Authority*, 2020 IL App (1st) 190479, ¶ 31. Illinois requires fact pleading, which means "the pleader is required to set out ultimate facts that support [the] cause of action." *Johnson v. Matrix Financial Services Corp.*, 354 Ill. App. 3d 684, 696 (2004). Mere conclusions—factual or legal—are insufficient. *Id.* However, "[a] complaint should not be dismissed pursuant to section 2-615 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery." *Project44, Inc.*, 2024 IL 129227, ¶ 18. Review is *de novo*. *Id.*

¶ 26                                    1.  Breach of Contract

¶ 27        A claim for breach of contract has four elements: "(1) the existence of a valid and enforceable contract, (2) performance by the plaintiff, (3) breach of contract by defendant, and (4) resultant injury to the plaintiff." *Zahdan v. Frontline Business Enterprise Inc.*, 2024 IL App (1st) 221351, ¶ 31. The only element at issue here is the existence of a valid, enforceable contract. Under Illinois law, municipalities may be bound only by contracts formed in the manner prescribed by statutes or ordinances. *Ad-Ex, Inc. v. City of Chicago*, 207 Ill. App. 3d 163, 169 (1990). A municipality must follow its own valid ordinances. *Id*. Furthermore, because Illinois is a fact-pleading jurisdiction, "a plaintiff must offer more than mere conclusions." *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 40. Thus, to state a claim for breach of contract against a municipal corporation, the plaintiff must plead specific facts showing that the alleged contract was formed in compliance with the applicable requirements. *Cf. id.* ¶ 40 (requiring plaintiff to plead specific facts showing each element necessary to invoke equitable estoppel against a municipality).

¶ 28        The Village contends that contracts with municipalities can only be formed in the methods prescribed by Illinois statute and local ordinance. We agree. "Only the corporate authorities have

the power to bind the city in a contract unless that power is expressly delegated to another." *Chicago Food Management, Inc. v. City of Chicago,* 163 Ill. App. 3d 638, 643 (1987). Illinois law is clear that neither a village president nor a municipal employee possess authority to enter into contracts on behalf of a municipality unless that authority is granted by the board of trustees. See 65 ILCS 5/8-1-7 (West 2024).

¶ 29    Here, the complaint alleges that the agreement was made by Mayor Henyard and various Village employees and asserts that they were "authorized representatives" of the Village. However, the complaint does not allege any facts showing that the board of trustees approved the agreement, delegated contracting authority to Mayor Henyard or other officials, or otherwise authorized the purported contract. Without specific factual allegations, the conclusory assertion that the individuals in question were "authorized representatives" is insufficient to establish the existence of a valid, enforceable municipal contract.

¶ 30    JPTS relies on agency law principles, including implied authority, apparent authority, and ratification, to argue that Mayor Henyard had authority to enter into the contract on the Village's behalf. However, Illinois courts have consistently rejected such theories where a plaintiff fails to plead compliance with statutory contracting requirements. See *McMahon v. City of Chicago*, 339 Ill. App. 3d 41, 46 (2003). Where a plaintiff depends on representations made by an official who lacked authority, such reliance is deemed unreasonable because the statute places the party on notice of the limits of that official's power. *Chicago Patrolmen's Association v. City of Chicago*, 56 Ill. 2d 503, 508 (1974).

¶ 31    Since JPTS failed to allege facts showing that the Village's corporate authorities authorized the agreement, the complaint does not adequately plead the existence of a valid and enforceable contract. Consequently, JPTS has not stated a legally sufficient claim for breach of contract against the Village. This claim was properly dismissed.

¶ 32                          2.  Local Government Prompt Payment Act

¶ 33     In addition to damages for breach of contract, JPTS's complaint sought statutory interest under the Prompt Payment Act (50 ILCS 505/1 *et seq.* (West 2024)) for invoices that were allegedly left unpaid. The Prompt Payment Act does not create an independent basis for liability; rather, it provides statutory interest for failing to make on-time payments based on an existing obligation to pay. See *id.* § 4. Here, the alleged obligation to pay arises under the breach of contract claim, which we have just found was properly dismissed. It follows that this claim, which depended on the breach claim, was also properly dismissed.

¶ 34                          3.  Fraudulent Misrepresentation

¶ 35     The only basis the Village raised for dismissing the fraudulent misrepresentation claim was immunity under the Tort Immunity Act, and it does not argue on appeal that the claim was legally insufficient. We therefore need not consider whether JPTS stated a legally sufficient claim. See *Padgett v. A & M Insulation Co.*, 266 Ill. App. 3d 320, 323 (1994) ("Grounds not specified in a motion cannot be argued on appeal.").

¶ 36                          4.  Quantum Meruit

¶ 37     *Quantum meruit* is a quasi-contractual legal theory based on a contract implied by law. *Council for Jewish Elderly v. Kurtz,* 2024 IL App (1st) 230102, ¶ 42. To recover under a *quantum meruit* theory, a plaintiff must plead and prove that "(1) it performed a service to the benefit of the defendant, (2) it did not perform the service gratuitously, (3) the defendant accepted this service, and (4) no written contract existed to prescribe payment for this service." *Jameson Real Estate, LLC v. Ahmed*, 2018 IL App (1st) 171534, ¶ 61. In a *quantum meruit* action, the measure of recovery is the reasonable value of work and material provided. *Hayes Mechanical Inc. v. First Industrial, L.P.*, 351 Ill. App. 3d 1, 9 (2004).

¶ 38     JPTS's principal brief sets out the basic elements of *quantum meruit* and tersely explains why it has adequately alleged them. Citing *Direct Energy Business, LLC v. City of Harvey*, 2021 IL App (1st) 200629, the Village counters that, when the defendant is a municipality, *quantum meruit* is

not available when "the invalidity of the contract was not due to any action or misconduct by the city council." *Id.* ¶ 25. JPTS does not acknowledge *Direct Energy* in its reply brief. Instead, it baldly asserts that "Illinois law precludes municipalities from unjustly retaining services without compensation." The case it cites for that proposition does not say that, which is not surprising because it was a dispute between two private parties—no municipal party was involved. See *Archon Construction Co. v. U.S. Shelter, L.L.C.*, 2017 IL App (1st) 153409.

¶ 39     Although we are unable to determine whether *Direct Energy* does or does not apply to the case at hand, that is because, once again, the complaint alleges conclusions rather than facts. As noted above, the complaint alleges that Mayor Henyard and certain municipal employees were "authorized representatives" of the Village. Under the rule in *Direct Energy*, JPTS's *quantum meruit* claim would fail as a matter of law unless the alleged authorization involved the board of trustees. But the complaint leaves unanswered the basic question of who purportedly authorized those officials to enter into the alleged contract. Similarly, the complaint alleges that JPTS's services "were accepted and used by [the Village]." Who accepted them? What was the manner of the supposed acceptance? The complaint is insufficient because it fails to set out any ultimate facts that, if proven, would support the conclusion that the Village "accepted" them. *Johnson*, 354 Ill. App. 3d at 696. Just like the claim for breach of contract, the claim for *quantum meruit* was legally insufficient, so it was properly dismissed.

¶ 40                              5.  Unjust Enrichment

¶ 41     Unjust enrichment, like *quantum meruit*, is a quasi-contractual legal theory based on a contract that is implied by law. *Council for Jewish Elderly*, 2024 IL App (1st) 230102, ¶ 42. To be entitled to recover under the theory of unjust enrichment, the plaintiff must plead and prove that (1) the plaintiff furnished valuable services or materials to the defendant; (2) there is not an express contract concerning those services or materials; and (3) the defendant received them under circumstances that would make it so unjust for the defendant to retain that benefit as to "violate the fundamental principles of justice, equity, and good conscience." *C. Szabo Contracting, Inc. v.*

*Lorig Construction. Co.*, 2014 IL App (2d) 131328, ¶ 24. "Unjust enrichment is based on the theory that a contract will be implied in law to avoid one party's retention of benefits at the expense of another." *Herbert W. Jaeger & Associates v. Slovak American Charitable Ass'n*, 156 Ill. App. 3d 106, 111 (1987). It follows that the recovery in the case of unjust enrichment "is properly limited \*\*\* to the benefit acquired, and an enriched party who is innocent of any wrongdoing is not required to reimburse the other's losses and expenses." *Id.* So, unlike *quantum meruit*, the focus is "on the benefit to the nonbreaching party." *Id.*

¶ 42    Here, the complaint alleges that JPTS trimmed or removed nearly 1000 storm-damaged trees at the behest of the mayor and other Village officials. It is fair to infer that those services were valuable and of at least some benefit to the Village. Although the Village argues vehemently that there would be no justice in requiring it to compensate JPTS for what the Village characterizes as "extortionate expenditures" because it would, among other things, "violate the public trust" and "reward unlawful conduct," we are limited to considering only what is alleged in the pleading before us, which we must construe in the light most favorable to JPTS. And we cannot say that there is no set of circumstances where it would be unjust for the Village to retain the benefit of services performed at the express request of city officials, including the mayor herself. Regardless of which party might ultimately prevail, the question right now is simply whether the claim has been adequately pleaded. We find that it has, so it should not have been dismissed.

¶ 43                                6.  Promissory Estoppel

¶ 44    The last claim in JPTS's complaint is based on the doctrine of promissory estoppel. "The doctrine operates to impute contractual stature based upon a promise that is not supported by consideration and to provide a remedy to the party who detrimentally relies on that promise." *Matthews v. Chicago Transit Authority*, 2016 IL 117638, ¶ 93.

¶ 45    Here, the promissory estoppel claim fails on the face of the complaint. This claim expressly alleges that JPTS promised to perform trimming and removal services in exchange for the Village (or its employees) promising to pay JPTS an agreed rate. That is textbook mutual consideration. If

the municipal officials were authorized to bind the Village, then the contract would be valid and JPTS's claim would be for breach. If, on the other hand, they were not authorized to bind the Village, that would mean that the Village did not make any promises that could be the foundation for estoppel. See *id.* ¶¶ 98-99. Either way, there is no set of facts under which JPTS would be entitled to recover under promissory estoppel. This claim was properly dismissed.

¶ 46                                    III.  CONCLUSION

¶ 47        In summary, we hold as follows. First, the circuit court properly dismissed count I (breach of contract), count II (Prompt Payment Act), count IV (*quantum meruit*), and count VI (promissory estoppel), as none of those counts stated a legally sufficient claim. Second, the circuit court erred by granting the motion to dismiss count III (fraudulent misrepresentation) because the Village did not carry its initial burden of showing that the misrepresentations in question were purely oral. Third, the circuit court erred by granting the motion to dismiss count V (unjust enrichment) because JPTS pleaded a legally sufficient claim.

¶ 48        Accordingly, the circuit court's judgment is affirmed with respect to counts I, II, IV, and VI; its judgment is reversed with respect to Counts III and V; and the cause is remanded for further proceedings.

¶ 49        Affirmed in part, reversed in part, and remanded.